UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FILED OCT 28 2010

| | |
|---|---|
| DIESEL MACHINERY, INC., <br> a South Dakota corporation, <br><br> Plaintiff, <br><br> -vs- <br><br> MANITOWOC CRANE GROUP, <br> a Wisconsin corporation; <br> MANITOWOC COMPANY, INC., <br> a Wisconsin corporation; <br> MANITOWOC CRANES, INC., <br> a Wisconsin corporation; <br> GROVE U.S., LLC, <br> a Delaware limited liability company; <br> NATIONAL CRANE CORPORATION, <br> a Delaware corporation; <br> DEUTSCHE GROVE GMBH, <br> a German limited liability company; and <br> POTAIN SAS, <br> a French limited liability company, <br><br> Defendants. | CIV. 09-4087 <br><br><br> ORDER |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending are Diesel Machinery Inc.'s ("DMI's") motion to enforce discovery[1] and Defendants' (collectively "Manitowoc's") motion for protective order.[2]

---

[1] Doc. 36.

[2] Doc. 48.

## BACKGROUND

DMI argues that four of the named defendants have arrogantly[3] not responded to discovery requests and should be ordered to do so. Second, DMI argues that Groves'[4] attorney client objections should be denied because Manitowoc's "refusal to comply with Rule 26(b)(5) was not and is not accidental."[5] Third, DMI argues individual reasons in response to each of Groves' objections.

DMI did not directly respond to Manitowoc's motion for a protective order. Instead DMI moved for an extension of time to respond to Manitowoc's motion for a protective order.[6] DMI wants to postpone its response to Manitowoc's protective order motion until 30 days after the ruling on DMI's motion to compel. DMI argues no depositions have been taken and none will probably be taken until the dispute about documents is resolved.

Manitowoc argues all seven defendants responded to DMI's discovery requests. Second, Manitowoc argues attorney client privilege issues here are complex and central to this case, but Manitowoc is willing to waive the privilege for the limited purpose of providing testimony from in house counsel about South Dakota law and DMI, and willing to produce the documents he authored.[7] Third, Manitowoc argues its individual objections are warranted.

---

[3]Doc. 37, p. 5.

[4]There are seven defendants, two of which are Grove U.S. and Deutsche Grove. "Grove" is used at this place in the opinion because that is the name used by DMI and to which the words in quotation marks refer. Other than this reference to "Grove" in this opinion the name "Manitowoc" will be used to refer to all seven defendants.

[5]Doc. 37, p. 12.

[6]Doc. 80.

[7]Doc. 73, p. 5-6.

Manitowoc moves to quash DMI's deposition notices of Glen Tellock, Eric Etchart, and Maurice Jones and asks for a ruling that there is only a limited waiver of attorney client privilege if Mark Klaiber testifies and produces documents he authored.

## DECISION

### All Seven Defendants Responded To DMI's Written Discovery.

Manitowoc's introductory paragraph in its responses to DMI's discovery requests reveals the responses are from all seven defendants:[8]

> Defendants The Manitowoc Crane Group, The Manitowoc Company, Inc., Manitowoc Cranes, Inc., Grove U.S., LLC, National Crane Corporation, Deutsche Grove GmbH, and Potain SAS (hereinafter collectively referred to as "Manitowoc,") for their response to DMI's [discovery requests] ....

All seven defendants are represented by the same lawyers. DMI's claim that some of the defendants did not respond to the written discovery documents is without merit. DMI's motion to compel Manitowoc Crane Group, Manitowoc Company, Inc., Manitowoc Cranes, Inc., National Crane Corporation, and Potain SAS to respond separately is DENIED.

### Attorney Client Privilege.

DMI suggests that all of Manitowoc's objections based on attorney client privilege should be denied because Manitowoc has not proven the privilege applies where each objection was asserted. Manitowoc suggests that Manitowoc could be allowed to make a limited waiver of the attorney client privilege to permit Mark Klaiber to testify and to produce documents he authored.

There are two issues about the attorney client privilege: (1) whether there can be a limited waiver of the attorney client privilege as Manitowoc suggests in its motion for a protective order and

---

[8]Doc. 37-12.

3

(2) whether Manitowoc's objections to DMI's written discovery based on attorney client privilege are appropriate in each instance. DMI's invitation to make a blanket ruling that Manitowoc's objections based on attorney client privilege should all be denied because Manitowoc did not serve a privilege log is declined. The attorney client objections will be decided along with Manitowoc's other objections as each objection is addressed individually.

The parties view the fundamental facts very differently, but it is a fundamental fact that Manitowoc at the beginning of the pertinent events was thinking about terminating DMI's dealership. During the course of events Manitowoc's in house legal counsel was involved and provided legal advice to Manitowoc.[9] There is nothing in the record to identify what Mark Klaiber's

---

[9]Manitowoc's in house legal counsel, therefore, is potentially both a fact witness and legal advisor. Mark Klaiber does not appear on the court docket sheet as counsel of record.

Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. *Erie R. Co. v. Tompkins* 304 U.S. 64, 78, 58 S.Ct. 817, 822 (1938); *see also* Federal Rule of Evidence 501and *Baker v. General Motors Corp.* 209 F.3d 1051, 1053 (8th Cir. 2000).

SDCL 19-1-3 provides in pertinent part:

> When an attorney is a witness for his client upon any trial except as to merely formal matters such as the attestation or custody of an instrument or the like, he shall not further participate in such trial.

SDCL 19-1-3 simply states an attorney that testifies as a witness can no longer represent his client in that case. *See Ward v. Lange*, 553 N.W.2d 246, 253 (citation omitted).

> Therefore, we are hereby making it incumbent upon the judges of the circuit courts of this state to enforce this provision. Henceforth, if an attorney testifies for his client as to contested matters, neither he nor any member of his firm will be allowed to represent that client at any further proceedings directly relating to that case. If for some reason the attorney does continue to represent the client after becoming a witness, his testimony will be considered incompetent and stricken from the record.

*Matter of Evans' Estate*, 238 N.W.2d 677, 680 (SD 1976).

4

testimony would be and what his documents would reveal if he testified after Manitowoc waived the attorney client privilege.

Voluntary disclosure of attorney client communications expressly waives the privilege.[10] The waiver extends to any information directly related to that which was actually disclosed.[11] Manitowoc suggests pre and post litigation as the dividing line between that which could be disclosed and that which should not be disclosed:[12]

> Manitowoc is willing to present Mr. Klaiber for deposition relating to pre-litigation facts, analysis and advice pertaining to DMI. Defendants request however that the Court issue a Protective Order confirming that producing in-house counsel Klaiber for deposition and producing documents he authored or received in connection with pre-litigation legal advice he provided Grove shall constitute only a limited waiver, not a full waiver, of attorney-client privilege. The basis for this aspect of Defendants' motion is that while advice provided to Grove prior to the notice of intent to terminate and litigation may be relevant and discoverable, if Defendants agree to produce in house counsel for deposition and discovery, permitting discovery beyond these limited areas would improperly provide DMI access to post-litigation defense strategy and mental impressions of counsel that are not discoverable and should never be subject to discovery. By this motion, Manitowoc seeks to ensure that producing Mr. Klaiber on this limited basis will not result in a complete waiver of Manitowoc's attorney-client privilege.

The problem is this: DMI sued Manitowoc two days after receiving Manitowoc's notice of termination. But it was not until about three months later, after suit was started, that Manitowoc rescinded its notice of termination.[13] Manitowoc desires to introduce attorney client evidence about

---

[10]*U.S. v. Davis*, 583 F.3d 1081, 1090 (8th Cir. 2009).

[11]*Id.*

[12]Doc. 49, p. 2.

[13]Doc. 49, p. 3. The following is a quotation from Manitowoc's brief (internal parentheses, quotation marks and citations omitted):

5

its notice of termination before suit while at the same time Manitowoc desires to protect from disclosure its attorney client evidence about rescinding notice after suit. Something relevant happened between the notice of termination and the notice of rescinding termination. During that same time the lawsuit was pending. The strategy *about defending the lawsuit* and the strategy *about rescinding the termination* are surely so inextricably entwined that the strategies cannot be separated. And that same post-lawsuit attorney client or work product evidence is surely directly related to the pre-lawsuit, pre-termination attorney client or work product evidence. So, if the privileges are waived for pre-litigation purposes, the waiver cannot exclude the post-litigation strategy which is directly related. And of course some of the post litigation strategy occurred before the notice to rescind termination and is inextricably entwined.

Again, voluntary disclosure of attorney client communications expressly waives the privilege and the waiver extends to any information directly related to that which was actually disclosed.[14] "A waiver of the attorney-client privilege may be found where the client places the subject matter of the privileged communication at issue."[15] Waiver may be implied by conduct making it unfair

---

On June 17, 2009, pursuant to the terms of the parties' Distributor Sales and Service Agreement, Manitowoc delivered to DMI a 90-day notice of intent to terminate the distributorship between Grove and DMI .... Two days later, on June 19, 2009 DMI filed the above-captioned action. DMI alleges that Manitowoc terminated the Agreement between the parties on June 17, 2009 when Manitowoc delivered the 90 day notice of intent to terminate. DMI alleges that Manitowoc's issuance of a letter providing 90-day advance notice of its intent to terminate the Agreement violates the South Dakota Dealer Protection Act, S.D.C.L. § 37-5-3, and constitutes a breach of contract. On September 8, 2009, before the date on which termination was to occur, Manitowoc withdrew the notice of intent to terminate.

[14]*U.S. v. Davis*, 583 F.3d 1081, 1090 (8th Cir. 2009).

[15]*Baker v. General Motors Corp.*, 209 F.3d 1051, 1055 (8th Cir. 2000).

6

for a client to invoke the privilege.[16] "The attorney/client privilege is waived by the voluntary disclosure of privileged communications, and courts typically apply such a waiver to all communications on the same subject matter."[17]

Manitowoc has not yet waived the attorney client privilege for Mark Klaiber. Manitowoc is asking for the court's blessing to limit waiver of the attorney client privilege to Mark Klaiber only, and only to documents authored by him only for the period before litigation was commenced, i.e. so that Mark Klaiber can testify about the reasons for the termination notice but not about the reasons for withdrawing the termination notice. Manitowoc's request cannot be granted because it appears the post-litigation legal advice given by Mark Klaiber is directly related to his pre-litigation advice. Manitowoc has a choice to make: either to waive the privilege for all of Mark Klaiber's legal advice to Manitowoc about the termination of DMI's dealership franchise, or none of it.[18] Manitowoc's motion for a protective order to limit the proposed waiver of attorney client evidence from Mark Klaiber is DENIED.

---

[16]*Union County, Iowa v. Piper Jaffray & Co., Inc.*, 525 F.3d 643, 646-647 (8th Cir. 2008) in its discussion about Iowa law citing *Brandon v. West Bend Mut. Ins. Co.*, 681 N.W.2d 633, 642 (Iowa 2004).

[17]*PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*, 187 F.3d 988, 992 (8th Cir. 1999) citing *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir.1998).

[18]The Eighth Circuit Court of Appeals has recognized limited waivers of the attorney client privilege. *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1977). But the limited waiver there was different from the limited waiver Manitowoc wishes. The waiver in *Diversified* was given so that only certain persons, there the SEC, could see the privileged documents. The privilege was not waived for others. In Manitowoc's case the intent is to limit the waiver by subject matter. *Diversified* has been criticized by other Circuits and observed to be a minority position. See *In re Target Technology Co. LLC*, 208 Fed.Appx. 825, 826-827, 2006 WL 3006708, 2 (C.A. Fed., 2006). *Diversified* is noted even though it is not controlling here.

7

**Manitowoc's Objections to DMI's Written Discovery.**

A.  DMI's First Request for Production

**REQUEST NO. 10:** Selection of Titan Machinery. Any and all DOCUMENTS which refer or relate to why and/or how defendants thought Titan Machinery would be a better choice for the South Dakota Grove franchise, including without limitation all DOCUMENTS that comprise, relate or refer to:

> a) What sales performance goals were set for Titan with existing Manitowoc Crane Group dealer franchises (i.e. Grove and National Crane) and the extent to which Titan has met those goals;
>
> b) any evaluation or critique of Titan Machinery's performance as a Manitowoc, National Crane and/or Grove dealer from 2000 to the present.

Manitowoc's objection to subparts a) and b) is[19]:

> Manitowoc objects to this request, including all subparts, on the grounds that it is vague, ambiguous, overly broad, and seeks information not reasonably calculated to lead to the discovery of admissible evidence.

DMI's motion is GRANTED as to the general question for documents before September 8, 2009, but DENIED as to subpart a) and subpart b). That is, Manitowoc must produce all documents which refer or relate to why or how defendants thought Titan Machinery would be a better choice for the South Dakota Grove franchise. That is the opposite side of the coin to explain why DMI would *not* be the better choice, which inherently addresses SDCL 37-5-3 issues of equity and fairness to DMI. After DMI's termination, the performance goals for Titan and whether Titan met those goals are not relevant. Manitowoc's evaluation of Titan's performance before DMI was terminated likewise is not the issue. The issue is Manitowoc's termination of DMI as measured against SDCL

---

[19]Doc. 37-13.

8

37-5-3. If matters addressed in subparts a) and b) are part of Manitowoc's decision to terminate DMI, then those matters will surface in Manitowoc's response to the general question. It is trusted the parties will understand the court is well aware that Manitowoc believes it did not terminate DMI and that the court is not here predicting the outcome. The use of "termination" without reference to the dispute about it makes for more clear and concise reading and writing.

> **REQUEST NO. 12. Knowledge State Dealer Protection Laws.** All DOCUMENTS that mention or relate to defendants' knowledge of State dealer protection laws including without limitation DOCUMENTS that mention or directly relate to: (see sub-parts a-k).
>
> Response: Manitowoc objects to this request, including all subparts, on the grounds that it is vague, ambiguous, and seeks information protected by the attorney-client privilege and the work-product doctrine.

DMI's motion is GRANTED to the extent that Manitowoc must furnish the privilege log required by Federal Rule of Civil Procedure 26(b)(5)(A). Manitowoc cannot both withhold from discovery attorney client privilege evidence and then try to use it at trial. To the extent that Manitowoc attempts to use at trial any evidence which has been withheld from discovery under the claim of attorney client privilege, it is recommended that the evidence should not be allowed to be used at trial. Manitowoc's other boilerplate objections are not well taken.

> **REQUEST NO. 13.** Knowledge of South Dakota Dealer Protection Act. All DOCUMENTS that relate to defendants' knowledge and/or awareness of South Dakota's Dealer Protection Act including without limitation all DOCUMENTS which mention, relate or refer to:
>
> a) When and how defendants first became aware South Dakota law restricts or limits when a dealer franchise may be terminated;
>
> b) Any discussion, evaluation or mention of South Dakota's dealer protection laws.
>
> c) Any communication to or from any of defendants' employees regarding the SDDPA.

9

Response: Manitowoc objects to this request, including all subparts, on the grounds that it is vague, ambiguous, and seeks information protected by the attorney-client privilege and the work-product doctrine. Subject to and without waiver of the foregoing objections, any responsive, non-privileged documents will be produced at a mutually agreeable place and time after the Court has entered an appropriate Protective Order.

It is apparent (1) that an appropriate protective order has not been filed, and (2) that Manitowoc has nonetheless furnished attorney client privilege documents during discovery.[20] DMI's motion to compel is GRANTED to the extent that Manitowoc must furnish the privilege log required by Federal Rule of Civil Procedure 26(b)(5)(A). Manitowoc cannot both withhold from discovery attorney client privilege evidence and then try to use it at trial. To the extent that Manitowoc attempts to use at trial any evidence which has been withheld from discovery under the claim of attorney client privilege, it is recommended that the evidence should not be allowed to be used at trial. Manitowoc's other boilerplate objections are not well taken.

> **REQUEST NO. 16.** Other Similar Instances. All DOCUMENTS that mention, comprise, relate or refer to any of the following instances:
>
> a)  Each time when defendants attempted to withdraw or rescind a termination notice;
>
> b)  Each time when a dealer requested that defendants withdraw or rescind a termination notice;
>
> * * *
>
> e)  All DOCUMENTS related to any termination notice issued to any other dealer based on the same or similar "business decisions" that caused defendants to decide to terminate DMI.

Response: Manitowoc objects to this request on the grounds that it is overly broad, vague, and seeks information not reasonably calculated to lead to the discovery of admissible evidence.

---

[20]Doc. 117.

DMI's motion to compel is DENIED because the request for production is not relevant to any party's claim or defense and DMI has not demonstrated good cause for the discovery of Manitowoc's contractual relationships with others.

> **REQUEST NO. 17.** <u>Consolidation of Territories and Dealers</u>. All DOCUMENTS directly related to any plan to consolidate defendants' dealer territories and/or networks, including any perceived synergy to be achieved by doing so.
>
> <u>Response</u>: Manitowoc objects to this request on the grounds that it is overly broad, vague, and seeks information not reasonably calculated to lead to the discovery of admissible evidence.

DMI's motion to compel is GRANTED to the extent other South Dakota dealers are or were affected. The request for production is not otherwise relevant to any party's claim or defense and DMI has not demonstrated good cause for the discovery of Manitowoc's contractual relationships with others.

> **REQUEST NO. 18.** <u>Other Dealer Agreements</u>. DMI requests that the following DOCUMENTS be produced:
>
> \* \* \*
>
> b) DOCUMENTS that relate to any time when a dealer modified or amended any proposed dealer agreement since 2005.
>
> c) DOCUMENTS related to any discussions and/or consideration given to the potential for revising any of the dealer agreement forms in the United States since 2005 as they pertain to termination.
>
> d) Any dealer agreement or amendment thereto prepared for or sent to Titan Machinery since 2005.
>
> e) All DOCUMENTS that directly relate to any actual or proposed amendment to any dealer agreement with Titan that relates to or includes South Dakota.

11

Response: Manitowoc objects to this request on the grounds that it is overly broad, vague, ambiguous, and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, any nonprivileged documents responsive to a), above, will be produced at a mutually agreeable place and time after the Court has entered an appropriate Protective Order.

It is apparent (1) that an appropriate protective order has not been filed, and (2) that Manitowoc has nonetheless furnished attorney client privilege documents during discovery.[21] DMI's motion to compel is GRANTED to the extent that Manitowoc must furnish the privilege log required by Federal Rule of Civil Procedure 26(b)(5)(A). Manitowoc cannot both withhold from discovery privileged evidence and then try to use it at trial. To the extent that Manitowoc attempts to use at trial any evidence which has been withheld from discovery under the claim of privilege, it is recommended that the evidence should not be allowed to be used at trial. Manitowoc's other boilerplate objections are not well taken.

> **REQUEST NO. 19.** Prior Dealer Protection Act Claims. DOCUMENTS which contain or mention any prior claim, threat or suit against defendants where it has been alleged that any of the defendants breached or violated any state dealer protection law.
>
> Response: Manitowoc objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

DMI's motion to compel is GRANTED to the extent that SDCL 37-5-3 applies to the prior matter.

> **REQUEST NO. 21.** Market Share and Performance. All DOCUMENTS which show Grove market share in the Midwest and nationally over the last 10 years. And, DOCUMENTS which show expectations related to future market share from new crane sales, parts and service.

---

[21]Doc. 117.

Response: Manitowoc objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonable calculated to lead to the discovery of admissible evidence. Furthermore, this request seeks the production of confidential and proprietary information.

DMI's motion to compel is DENIED because the request for production is not relevant to any party's claim or defense and DMI has not demonstrated good cause for the discovery of Manitowoc's market share in the Midwest.

B.  DMI's Second Request for Production

**REQUEST NO. 15.** All documents reflecting any review, study, evaluation or consideration by defendants' legal department of South Dakota law as it relates to dealer franchises.

Response: Manitowoc objects to this request on the grounds that it is vague, ambiguous, and seeks information protected by the attorney-client privilege and work-product doctrine.

DMI's motion is DENIED. The request expressly identifies work product or attorney client matters. If Manitowoc attempts to use any evidence at trial which it has not produced in response to this request for production, it is recommended that Manitowoc must not be allowed to use the evidence at trial.

**REQUEST NO. 20.** All Corporate Policy Bulletins that refer or relate to:

   A. Crane dealer terminations;

   B. Consolidation of crane dealers and/or territories from 2005 to the present;

   C. Compliance with State Dealer Protection Laws; . . .

Response: Manitowoc objects to this request on the grounds that it is that it is overly broad, vague, ambiguous, unduly burdensome, and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Manitowoc also objects to this request on the grounds that it seeks information protected by the attorney-client privilege and work-product doctrine. Subject to and without waiver of the foregoing objections, any non-privileged documents responsive to D and E will be produced at a mutually agreeable place and time after the Court has entered an appropriate Protective Order.

DMI's motion to compel is GRANTED to the extent the bulletin considers the effect of SDCL 37-5-3 on the dealer termination or consolidation unless Manitowoc claims the bulletin is privileged, in which event Manitowoc must furnish the privilege log required by Federal Rule of Civil Procedure 26(b)(5)(A).

C. DMI's First Interrogatories

**INTERROGATORY NO. 7.** IDENTIFY, explain and describe each instance where YOU have attempted to withdraw, rescind or cancel a termination notice issued to a dealer, and as to each such instance IDENTIFY: (a) All PERSONS with knowledge of the instance including their role; and (b) All DOCUMENTS which refer to or directly relate to such instance.

Response: Manitowoc objects to this interrogatory on the grounds that it is overbroad and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of this objection, upon reasonable inquiry, the undersigned is not aware of such an instance involving Grove.

DMI's motion is DENIED. The answer that all defendants are not aware of any is a complete answer. Beginning on page 2 of this opinion it is explained why this is the answers of all seven defendants.

**INTERROGATORY NO. 9.** IDENTIFY each Grove dealer in the United States to whom YOU issued a termination notice since January 1, 2005, and as to each such dealer IDENTIFY:

(a) Why the notice was issued; and

(b) Whether they are still a Grove dealer.

Response: Manitowoc objects to this interrogatory on the grounds that it is overly broad and seeks information not reasonably calculated to lead to the discovery of admissible evidence.

DMI's motion is DENIED. Only South Dakota dealers and South Dakota law are pertinent.

14

**INTERROGATORY NO. 10.** IDENTIFY each dealer to whom YOU seriously considered terminating because of the same or similar "business decision" rationale that triggered YOUR decision to terminate DMI, and as to each such instance IDENTIFY:

    (a)    All PERSONS with knowledge of said serious consideration; and

    (b)    Whether each such dealer is still a Grove dealer.

Response: Manitowoc objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad, and seeks information not reasonably calculated to lead to the discovery of admissible evidence.

DMI's motion is GRANTED. The question is relevant to claims in this lawsuit.

**INTERROGATORY NO. 12.** Describe and explain any and all claims or accusations made that defendants violated any state dealer protection law by attempting to, threatening to, giving notice to or actually terminating a dealer, and as to each such claim IDENTIFY:

    (a)    The PERSON making the accusation or claim;

    (b)    All DOCUMENTS that consist of or directly relate to such accusations and/or claims.

Response: Manitowoc objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad, and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, Manitowoc states that other than the dealership at issue, none for Grove in South Dakota.

DMI's motion is DENIED. The answer is complete. Only South Dakota dealers and law are pertinent. Beginning on page 2 of this opinion it is explained why these are the answers of all seven defendants.

**INTERROGATORY NO. 13.** IDENTIFY all publications, books, magazines and other DOCUMENTS YOU have received in the last 7 years which discuss or mention dealer termination restrictions imposed by state dealer protection laws.

Response: Manitowoc objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Manitowoc further objects to this interrogatory on the grounds

15

that it seeks information protected by the attorney-client privilege. Subject to and
without waiver of the foregoing objections, Manitowoc states that upon reasonable
inquiry, the undersigned is not aware of any on-privileged documents responsive to
this request.

DMI's motion is DENIED. The answer is complete. Manitowoc responded that upon reasonable inquiry it is not aware of any non-privileged documents. Manitowoc must provide a privilege log if there are privileged documents.

> **INTERROGATORY NO. 15.** IDENTIFY all legal proceedings and/or arbitration
> proceedings to which YOU have been a party (including an amicus) in the past 10
> years and which involved the actual, attempted, threatened or noticed termination of
> a dealer or the interpretation of any law or statute related to dealer termination
> including without limitation:
>
> (a) IDENTIFY all PERSONS with knowledge of the
> proceedings;
>
> (b) IDENTIFY all DOCUMENTS in YOUR care, custody or
> control which directly related to each such proceeding.

Response: Manitowoc objects to this interrogatory on the grounds that it is overly
broad, unduly burdensome, and not reasonably calculated to lead to the discovery of
admissible evidence. The current action is the only lawsuit related to the South
Dakota Dealer Protection Act.

DMI's motion is DENIED. The answer is complete. Manitowoc responded that this is the only lawsuit related to the South Dakota Dealer Protection Act. Only South Dakota law and dealers are pertinent.

D. DMI's Second Interrogatories

> **INTERROGATORY NO. 2.** IDENTIFY each and every attorney and paralegal
> employed within your legal department from 2000 to the present and as to each
> explain:
>
> a) Their dates of employment and position;
>
> b) The extent to which they reviewed any aspect of South
> Dakota's dealer protection laws;

16

        c)       The extent to which they reviewed any aspect of any issue related to DMI;

        d)       IDENTIFY all DOCUMENTS that relate to either B or C above.

Response: Manitowoc objects to this interrogatory, including all subparts, on the grounds that it is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. Manitowoc also objects to this interrogatory on the grounds that it seeks information which could only be used to attempt to obtain information protected by the attorney-client privilege and work-product doctrine.

DMI's request is DENIED for all of the reasons mentioned in Manitowoc's objections.

**Manitowoc's Motion to Quash Subpoenas**

Manitowoc moves to quash DMI's notice to depose Glen Tellock, Eric Etchart, and Maurice Jones. Manitowoc represents "these three individuals have no personal knowledge of the facts relevant to this lawsuit, no personal involvement in any direct or indirect dealings with DMI . . . ."[22] Glen Tellock is the President and Chief Executive Officer of The Manitowoc Company, Inc. Eric Etchart is the President of Manitowoc Cranes, Inc. Maurice Jones is General Counsel and Secretary of The Manitowoc Company, Inc.[23] In their respective roles, Tellock, Etchart, and Jones are Manitowoc's highest-ranking corporate executives.[24] These executives do not have personal familiarity with the facts of this case. None of these individuals were involved in the contract negotiations that took place with DMI or the decision-making process that led to the issuance of a

---

[22]Doc. 49, p. 2.

[23]Doc. 49, p. 4.

[24]Doc. 49, p. 9.

17

90-day notice of intent to terminate to DMI.[25] The depositions of other Manitowoc employees or former employees who were actually involved with DMI and the decision to issue a notice of intent to terminate to DMI have not yet taken place.[26] DMI has served a deposition notice pursuant to Rule 30(b)(6).[27] DMI has also noticed ten other depositions of Manitowoc officers or employees.[28] Manitowoc's motion to quash the deposition notices of Glen Tellock, Eric Etchart, and Maurice Jones is GRANTED under F.R.Civ.P. 26(c)(1)(C). DMI may move to take these three depositions after completing other discovery. DMI must demonstrate good cause for taking these depositions before the depositions will be allowed.

## ORDER

It is ORDERED:

1. That DMI's motion to compel (Doc. 36) is GRANTED IN PART and DENIED IN PART as described in this opinion.

2. That Manitowoc's motion (Doc. 48) to make a limited waiver of the attorney client privilege is DENIED.

3. That Manitowoc's motion to quash (Doc. 48) the deposition notices of Glen Tellock, Eric Etchart, and Maurice Jones is GRANTED.

4. That DMI's motion to extend (Doc. 80) the time for responding to Manitowoc's motion for a protective order is DENIED.

Dated October 28, 2010.

BY THE COURT:

_____
John E. Simko
United States Magistrate Judge

---

[25]Doc. 49, p. 9.

[26]Doc. 49, p. 10.

[27]Doc. 49, p. 10.

[28]Doc. 50-8.