

FILED
APR 07 2011

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DIESEL MACHINERY, INC., <br> A South Dakota Corporation, | * <br> * <br> * | CIV 09-4087-RAL |
| Plaintiff, | * <br> * | |
| vs. | * <br> * <br> * | OPINION AND ORDER <br> ON DISCOVERY MOTIONS |
| MANITOWOC CRANES, INC., <br> a Wisconsin Corporation; <br> GROVE U.S., LLC, <br> a Delaware Limited Liability Company; <br> NATIONAL CRANE CORPORATION, <br> a Delaware Corporation; <br> DEUTSCHE GROVE GMBH, <br> a German Limited Liability Company; <br> POTAIN SAS, <br> a French Limited Liability Company, | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | |
| Defendants. | * | |

## I. INTRODUCTION

In this action, Plaintiff Diesel Machinery, Inc. ("DMI") sued Defendants, collectively referred to as "Manitowoc," for allegedly terminating the 2005 Distributor Sales and Service Agreement ("the Agreement") between DMI and Manitowoc. DMI alleged that the claimed termination violated the South Dakota Dealer Protection Act ("SDDPA"), specifically SDCL § 37-5-3, and breached the Agreement. DMI's Complaint prayed for recovery of lost future profits and punitive damages. Manitowoc filed a counterclaim seeking a declaratory judgment that DMI is obligated to perform its obligations under the Agreement and alleging that DMI breached the Agreement. On March 31, 2011, this Court granted Manitowoc's Motion for Summary Judgment in full on Count I and Count III. Manitowoc's Motion for

Summary Judgment was granted on Count II to the extent that DMI alleged an express breach of contract, but denied insofar as DMI alleged a breach of the implied covenant of good faith and fair dealing.

The following three discovery motions remain pending: Manitowoc's Motion for Sanctions and Protective Order (Doc. 117), DMI's Motion to Compel Deposition of Mark Klaiber (Doc. 173), and DMI's Motion to Compel Discovery Regarding other Dealer Terminations (Doc. 169). All three motions have been fully briefed, were argued before this Court at a hearing on March 24, 2011, and are ripe for decision.

## II. Manitowoc's Motion for Sanctions and Protective Order

### A. Factual Background

Manitowoc requests under Rule 26(c) of the Federal Rules of Civil Procedure for the Court to issue a protective order and impose sanctions on DMI's counsel, Michael Healy, for violating Rule 26(b)(5)(B) by his use of a privileged document inadvertently produced by Manitowoc and improperly utilized by DMI in DMI's Motion for Partial Summary Judgment. Manitowoc argues that the appropriate sanction is the amount of Manitowoc's attorneys' fees in preparing this motion and replying to DMI's response. Manitowoc also requests entry of a protective order:

> 1. Ruling that the inadvertent production of the privileged document does not constitute a waiver of the attorney-client privilege;
> 2. Striking the inadvertently produced privileged document and arguments referring to it from DMI's Motion for Partial Summary Judgment;
> 3. Ordering DMI's counsel to return the computer disc containing the inadvertently produced privileged document; and
> 4. Prohibiting DMI's counsel from any further use of, reference to, or disclosure of the inadvertently produced privileged document.

(Doc. 117).

Several discovery disputes in this case have revolved around the involvement of Manitowoc's in-house legal counsel, Mark Klaiber, in the decisions leading to issuance of a 90-day notice of intent to terminate Manitowoc's dealership agreement with DMI. As early as December 23, 2009, Manitowoc took the position in writing that a deposition of Klaiber by DMI would be inappropriate because Klaiber's knowledge concerning this case is privileged. (Doc. 119-1, Dec. 23, 2009 Diehl letter to Healy). Manitowoc made efforts to negotiate an agreement with DMI to permit a limited waiver of the attorney-client privilege with respect to Klaiber, but the parties were unable to reach such an agreement.

On March 19, 2010, Manitowoc's counsel produced documents in response to DMI's discovery requests. The documents were produced on a CD containing documents Bates-numbered MCG0000916 through MCG0003456. Included on this CD was a document authored by Klaiber - MCG0001894 through MCG0001896 - that Manitowoc argues is privileged and was produced inadvertently. (Doc. 65-6). That document contains Klaiber's thoughts and legal advice on a proposal at that time internal to Manitowoc for termination of the Agreement with DMI. (Id.).

On March 26, 2010, Manitowoc's counsel, Robert Diehl, notified DMI's counsel, Michael Healy, in a letter transmitted via email that "[i]t has come to my attention that certain documents were inadvertently copied to that CD and inadvertently produced to you." (Doc. 119-2). The letter made reference neither to the allegedly privileged nature of any of the inadvertently produced documents nor to which particular documents were at issue. Diehl requested that Healy return the entire CD and refrain from printing, copying, downloading, or

otherwise retaining the documents or information contained on the CD and for Healy to confirm in writing that he had not made any inappropriate use of the CD. Diehl wrote that upon receipt of the returned CD, he would send Healy a corrected version of the documents via overnight delivery. Healy did not respond to Diehl's letter.

On May 26, 2010, Manitowoc filed a motion for protective order (Doc. 48), seeking a ruling that production of Klaiber for deposition and disclosure of pre-litigation documents that he authored or received would constitute only a limited, and not a full, waiver of the attorney-client privilege. On October 28, 2010, Magistrate Judge John E. Simko issued an order (Doc. 144) denying Manitowoc's motion for protective order on the grounds that a limited waiver was not possible and that Manitowoc had to choose whether to fully waive the privilege or not waive any of it. This Court overruled DMI's subsequent objections to Judge Simko's order. (Doc. 175).

On June 2, 2010, DMI filed its Motion for Partial Summary Judgment and supporting brief in the same document. (Doc. 61). In its motion papers, DMI referred to the document at issue. (Doc. 61, at 18, ¶ 101). DMI also attached the document as an exhibit to its motion papers. (Doc. 65-6). On February 16, 2011, this Court denied without prejudice DMI's Motion for Partial Summary Judgment. (Doc. 197).

**B. Discussion**

### 1. Whether DMI violated Rule 26(b)(5)(B) by failing to return the document at issue

Under Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that

> received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B). Diehl's March 26, 2010 letter to Healy requested return of the CD but did not notify Healy that Manitowoc believed the inadvertently produced document to be privileged. Although various other filings concerned Manitowoc's invocation of the attorney-client privilege with respect to Klaiber, it appears that Manitowoc's Motion for Sanctions and Protective Order, filed on September 30, 2010, was the first written notice to DMI that the specific document at issue was an inadvertently produced privileged document. DMI never subsequently complied with the requirements of Rule 26(b)(5)(B) concerning the document.[1]

### 2. Whether the document at issue is privileged

As discussed in the Opinion and Order Granting in Part and Denying in Part Defendants' Motions for Summary Judgment, South Dakota substantive law governs this dispute. (See Doc. 238, at 7-8). Under South Dakota law:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:

---

[1] This Court notes that during a later deposition, Healy made, at best, deceptive statements concerning his rationale for using the inadvertently produced document during depositions. (Doc. 228-1, at 4). Neither this Court nor any clerk of court authorized Healy to use the Klaiber document during depositions. Healy acknowledged as much to this Court during the recent hearing. Notwithstanding his explanations during the hearing, Healy during the deposition seemed to be attempting to mislead Diehl into believing that the Court or someone with the Court had approved of Healy's use of the Klaiber document during depositions.

(1) between himself or his representative and his lawyer or his lawyer's representative,
(2) between his lawyer and the lawyer's representative,
(3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein,
(4) between representatives of the client or between the client and a representative of the client, or
(5) among lawyers and their representatives representing the same client.

SDCL § 19-13-3.

This Court has received and reviewed a copy of the document at issue and finds that the document is protected by the attorney-client privilege under SDCL § 19-13-3. Klaiber's email is written in his legal capacity in response to an email from Manitowoc Vice President David Hull requesting legal advice concerning realignment of Manitowoc's dealers in the Dakotas. The content of Klaiber's response makes clear that he was providing his thoughts and advice as an attorney. Thus, it is a confidential communication made by an attorney, Klaiber, for the purpose of facilitating the rendition of professional legal services to his client, Manitowoc.

An inadvertent disclosure of a communication covered by the attorney-client privilege does not operate as a waiver of the privilege if "the holder of the privilege took reasonable steps to prevent disclosure" and "promptly took reasonable steps to rectify the error," including by following Rule 26(b)(5)(B). Fed. R. Evid. 502(b). This Court finds under Rule 502(b) that Manitowoc's disclosure of the document Bates-numbered MCG0001894 through MCG0001896 did not operate as a waiver of the attorney-client privilege. The production of the privileged document was inadvertent. Manitowoc took reasonable steps to prevent disclosure by devoting substantial time and numerous lawyers and paralegals to review the

-6-

thousands of pages identified for production, which apparently resulted in the inadvertent production of only one privileged document. Manitowoc asked for return of the CD one week after producing it. Although Diehl's March 26, 2010 letter to Healy did not expressly state that Manitowoc believed the inadvertently produced document to be privileged, Manitowoc's efforts to rectify the inadvertent production were reasonable under the circumstances. Therefore, Manitowoc did not waive the privilege with respect to the document at issue.

### 3. Whether a protective order should issue

Rule 26(c) of the Federal Rules of Civil Procedure permits the Court, for good cause, to issue an order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Manitowoc has demonstrated that DMI possesses an inadvertently produced privileged Manitowoc document and the privilege has not been waived. DMI has not returned the document. Therefore, good cause exists for a protective order with the following terms:

> 1. Manitowoc's production of document MCG0001894-MCG000186 was inadvertent and did not constitute a waiver of the attorney-client privilege;
> 2. MCG0001894-MCG000186 (Doc. 65-6) and arguments referring thereto in DMI's Motion for Partial Summary Judgment (Doc. 61) are hereby sealed.
> 3. DMI must return the CD containing the inadvertently produced privileged document; and
> 4. DMI is prohibited from further use, reference to, disclosure of, or retention of any copy of MCG0001894-MCG000186.

### 4. Whether DMI or Attorney Healy should be Sanctioned

Manitowoc also seeks sanctions in the form of costs and attorneys' fees associated with its motion. However, Manitowoc never expressly informed DMI under Rule

26(b)(5)(B) prior to filing its motion that the inadvertently produced document was privileged and did not identify any specific document. Manitowoc then waited more than six months following the inadvertent disclosure to file its Motion for Sanctions and Protective Order. In addition, Manitowoc never filed a separate certification of good faith with its motion for protective order, as required by S.D. Local R. 37.1, though it did state in its brief that "[w]hen Defendants' counsel learned of the inadvertently produced documents, it attempted to confer with counsel for DMI in a good-faith effort to resolve the issue without court intervention." (Doc. 118, at 2). Manitowoc has not shown sufficient notice under Rule 26(b)(5)(B) to support the imposition of sanctions. Under the circumstances, this Court will not award the monetary sanctions sought by Manitowoc. However, this decision should not embolden Healy, whose use of the Klaiber document and statements made in connection therewith during a deposition were, at best, deceptive.

### III. DMI's Motion to Compel Deposition of Mark Klaiber

DMI filed a motion to compel the deposition of Manitowoc in-house legal counsel Mark Klaiber. (Doc. 173). DMI argues that Klaiber has knowledge of various non-privileged factual information. In his October 28, 2010 order, Judge Simko noted that Klaiber "is potentially both a fact witness and legal advisor" because "[d]uring the course of events [when Manitowoc was considering termination of DMI's dealership] Manitowoc's in-house legal counsel was involved and provided legal advice to Manitowoc." (Doc. 144, at 4 n.9). Manitowoc contends that all knowledge Klaiber has of events underlying DMI's lawsuit derive from his capacity as legal counsel to Manitowoc, and that Klaiber possesses no relevant knowledge independent of that capacity. Indeed, Klaiber had no communication

-8-

with DMI, but was consulted as in-house counsel of Manitowoc concerning the providing of notice of termination of the Agreement with DMI.

On February 8, 2011, DMI filed a Motion for Extension of Time (Doc. 192) to file a reply brief supporting its Motion to Compel Deposition of Mark Klaiber. In the motion for an extension, DMI noted that Manitowoc's response (Doc. 186) to DMI's pending Motion to Compel Deposition of Mark Klaiber (Doc. 173) argued that DMI has other means by which to obtain the information it seeks from a deposition of Klaiber and that DMI has not demonstrated that Klaiber is uniquely in possession of material critical to its case. Manitowoc contended that DMI consequently cannot satisfy the rule of Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986), in which the Eighth Circuit held that a party seeking the deposition of trial counsel for an opposing party must demonstrate that:

> (1) no other means exist to obtain the information than to depose opposing counsel;
> (2) the information sought is relevant and nonprivileged; and
> (3) the information is crucial to the preparation of the case.

Id. Although Klaiber serves as Manitowoc's in-house counsel rather than trial counsel, deposition of in-house counsel under the circumstances raises concerns similar to those addressed in Shelton, in which the Court noted that "[t]he harassing practice of deposing opposing counsel (unless that counsel's testimony is crucial and unique) appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." Id. at 1330.

At the time of its motion for an extension, DMI argued that it could make a showing that deposing Klaiber would yield crucial, non-privileged facts unavailable by other means,

following depositions of "the core defense witnesses," which "will be completed by February 16, 2011." (Doc. 192). Accordingly, the Court granted DMI's motion for an extension of time.

DMI subsequently filed its reply brief (Doc. 199), arguing that it "has deposed the two executives having the most contact with Klaiber, Dave Hull and Robert Dixon," but that DMI still lacks answers to the following questions:

1. Why did Defendants wait 82 days before withdrawing the notice of intent to terminate?
2. What further considerations and discussions with South Dakota counsel triggered the withdrawal?
3. Why did Defendants not respond to DMI's inquiry concerning why Defendants wanted to cancel DMI's termination;
4. What discussions were had about possible efforts to re-terminate DMI or to establish Titan as a competing dealer in South Dakota.

(Doc. 199, at 1). The second such question plainly calls for privileged information. DMI has not demonstrated that no other means exist to obtain the answers to the other three questions. To the extent that Klaiber was involved in such matters, it was in his capacity as counsel advising Manitowoc. Therefore, DMI has not satisfied the standard for deposition of counsel for an opposing party.

### IV. DMI's Motion to Compel Discovery Regarding other Dealer Terminations

DMI moved under Rule 37 of the Federal Rules of Civil Procedure to compel discovery regarding other dealer terminations (Doc. 169) and requests that the Court: 1) order Manitowoc to comply with Judge Simko's October 28, 2010 order (Doc. 144) by answering Interrogatory No. 10 regarding other dealer terminations; and 2) order Manitowoc to produce Matthew Borchardt, Regional Business Director for Crane Sales, for a follow-up

deposition to answer questions about other dealer terminations that his counsel instructed him not to answer at deposition. Manitowoc opposes the motion.

### A. Interrogatory No. 10

DMI served Interrogatories and Defendants served various objections. DMI moved to compel answers (Doc. 36), and on October 28, 2010, Judge Simko ordered Defendants to, among other things, answer Interrogatory No. 10. That Order provided:

> "**INTERROGATORY NO. 10.** IDENTIFY each dealer to whom YOU seriously considered terminating because of the same or similar "business decision"[2] rationale that triggered YOUR decision to terminate DMI, and as to each such instance IDENTIFY:
>
> (A)  All PERSONS with knowledge of said serious consideration; and
> (B)  Whether each such dealer is still a Grove dealer.
>
> Response: Manitowoc objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad, and seeks information not reasonably calculated to lead to the discovery of admissible evidence.
>
> DMI's motion is GRANTED. The question is relevant to claims in this lawsuit."

(Doc. 144, Order, at 15).

On January 11, 2011, consistent with Judge Simko's ruling, Manitowoc served Supplemental Answers to DMI's First Interrogatories. The supplemental answer to Interrogatory No. 10 stated that "[t]o the best of Defendants' knowledge, there are no South Dakota dealers other than DMI responsive to this interrogatory." (Doc. 177-3, at 2).

Manitowoc argues that Judge Simko's ruling concerning Interrogatory No. 10 must be

---

[2]According to DMI, a "business decision" triggering the notice of intent to terminate was described by Manitowoc in its response to Interrogatory No. 1: "business goals: Manitowoc had a goal of single-source distribution." (Doc. 169-1, Defendants' Answers to DMI's First Interrogatories, at 3).

-11-

read in concert with the remainder of his order, which reveals Manitowoc's supplemental response to be fully compliant with the order. Manitowoc contends that a reasonable reading of Judge Simko's ruling regarding Interrogatory No. 10 in light of the remainder of the order is that the motion to compel was granted to the extent other South Dakota dealers are or were affected by the conduct alleged against Manitowoc.

DMI disagrees with Manitowoc's interpretation of Judge Simko's order, contending rather that the ruling on Interrogatory No. 10 contained "clear and unambiguous language" that the subject matter of Interrogatory No. 10 "is relevant to claims in this lawsuit." (Doc. 183, at 2). Additionally, DMI argues that Manitowoc's interpretation of the ruling to limit discovery to information concerning Manitowoc's dealers in South Dakota is illogical because it is well-established that DMI has been the only South Dakota dealer for 25 years. Judge Simko's order dealt with a number of discovery issues related to the context of Interrogatory No. 10. Judge Simko denied DMI's motion to compel documents concerning prior attempts to withdraw or rescind a termination notice, as sought by DMI in Request for Production of Documents No. 16, because "the request for production is not relevant to any party's claim or defense and DMI has not demonstrated good cause for the discovery of Manitowoc's contractual relationships with others." (Doc. 144, at 11). Judge Simko also denied DMI's motion regarding Interrogatory No. 9, which sought the identity of "each Grove dealer in the United States to whom you issued a termination notice since January 1, 2005." (Doc. 144, at 14). Judge Simko ruled that "[o]nly South Dakota dealers and South Dakota law are pertinent." Id. In addition, Judge Simko denied DMI's motion as to Interrogatory No. 15 seeking information concerning all of Manitowoc's legal proceedings in

the past 10 years related to dealer terminations, ruling:

> DMI's motion is DENIED. The answer is complete. Manitowoc responded that this is the only lawsuit related to the South Dakota Dealer Protection Act. Only South Dakota law and dealers are pertinent.

(Doc. 144, at 16). Judge Simko granted DMI's motion as to Request No. 17 seeking documents related to any Manitowoc plan to consolidate dealer territories, but he limited the information to be compelled to South Dakota, South Dakota dealers, and the SDDPA. (Doc. 144, at 11). Judge Simko's order as to Request Nos. 19 and 20 made similar limitations. (Id. at 12, 14).

A complete review of Judge Simko's October 28, 2010 order supports Manitowoc's position. It appears to be an oversight that Judge Simko's order did not specify in ruling on Interrogatory No. 10 that the answer was to be limited to other South Dakota dealers, as he had with respect to similar requests for production and interrogatories. Only South Dakota dealers and conduct related thereto are pertinent in this case. Manitowoc responded to Interrogatory No. 10 by stating that "there are no South Dakota dealers other than DMI responsive to this interrogatory." Moreover, in connection with other motions, this Court has reviewed e-mails and memoranda internal to Manitowoc. The reasons for Manitowoc's decision to issue a 90-day notice of termination were unique to business in the Dakotas, thus making discovery on issues of other dealer terminations outside of South Dakota and North Dakota unnecessary, unduly burdensome, and outside the scope of permissible discovery. Therefore, Manitowoc has complied with its discovery obligations regarding Interrogatory No. 10.

### B. Borchardt Deposition

On December 8, 2010, Manitowoc produced Borchardt for deposition. During the deposition, DMI's counsel asked Borchardt numerous questions regarding whether Manitowoc had terminated dealers in states other than South Dakota. Manitowoc's counsel objected and instructed Borchardt not to answer on the grounds that such questions exceeded the permissible scope of discovery as determined by Judge Simko's above-mentioned ruling on the motion to compel discovery consisting of interrogatory responses and documents.

Manitowoc contends that DMI's motion for production of Borchardt for a follow-up deposition should be denied because the instructions not to answer were appropriate under Rule 30(c)(2), which states that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). The advisory committee's notes to Rule 30 indicate that an instruction not to answer is permissible to enforce "a court directive limiting the scope or length of permissible discovery." Fed. R. Civ. P. 30(c)(2) 1993 advisory committee's notes; see also UltiMed, Inc. v. Becton, Dickinson & Co., No. 06-2266, 2008 WL 4849034, at *3 (D. Minn. 2008) (recognizing that a court-ordered limitation on the scope of permissible discovery in the underlying case is a proper basis for an attorney to instruct the deponent not to answer). Judge Simko's order did make rulings concerning the discoverability of certain matters in this lawsuit.

DMI counters that Judge Simko's order concerning the motion to compel interrogatory responses and production of documents under Rules 33 and 34 does not apply to a deposition under Rule 30. However, the scope of discovery is defined by Rule 26(b), and that same scope applies to Rules 30, 33, and 34. Consequently, the instructions not to answer

were appropriate under Rule 30(c)(2) "to enforce a limitation ordered by the court" regarding the scope of permissible discovery. DMI's motion to compel Manitowoc to produce Matthew Borchardt for a follow-up deposition to answer questions about other dealer terminations is denied.

## V. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Manitowoc's Motion for Sanctions and Protective Order (Doc. 117) is granted in part and denied in part. A protective order is hereby issued providing that: 1) Defendants' inadvertent production of the privileged document, Bates-numbered MCG0001894 through MCG0001896, did not constitute a waiver of Defendants' attorney-client privilege; 2) the privileged document and all references and arguments referring to it are hereby sealed; 3) Plaintiff's counsel shall return the computer disc containing the inadvertently produced privileged document to Mr. Diehl within 7 days of the date of this order; and 4) Plaintiff is prohibited from any further use of, reference to, disclosure of, or retention of any copy of the privileged document without further order of this Court. Defendants' motion for sanctions is denied. It is further

ORDERED that Plaintiff's Motion to Compel Deposition of Mark Klaiber (Doc. 173) is denied. It is further

ORDERED that Plaintiff's Motion to Compel Discovery Regarding other Dealer Terminations (Doc. 169) is denied.

Dated April __7__, 2011.

          BY THE COURT:

          _____
          ROBERTO A. LANGE
          UNITED STATES DISTRICT JUDGE